UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| NANCY ABBIE TALLENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:23-CV-52-KAC-DCP |
| | ) |
| OAK RIDGE METHODIST MEDICAL | ) |
| CENTER THROUGH JEREMY BIGGS, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER & REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the Order of Referral [Doc. 7] by United States District Judge Katherine A. Crytzer.

By way of background, Plaintiff filed her motion for leave to file in forma pauperis [Doc. 1] and her Complaint [Doc. 2] on February 6, 2023. On March 7, 2023, the undersigned granted Plaintiff's motion for leave to file in forma pauperis [Doc. 4]. The undersigned also recommended that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief can be granted and because the Court lacked jurisdiction over Plaintiff's medical malpractice claim [*Id.*]. On the day that the undersigned entered the Order & Report and Recommendation, Plaintiff filed an Amended Complaint [Doc. 5]. On July 25, 2023, Judge Crytzer granted Plaintiff leave to file her Amended Complaint and referred the Amended Complaint to the undersigned for screening pursuant to 28 U.S.C. § 1915.

On July 26, 2023, Plaintiff filed a motion to extend time to amend, seeking (1) an extension of time to file an amended Complaint to seek settlement negotiations, (2) that the Court encourage

Oak Ridge Methodist Medical Center to negotiate a settlement, (3) that the "[e]ncouragement of crimes being perpetrated daily against Plaintiff cease immediately[,]" (4) that the Court encourage Anderson County Circuit Court to rule on motions and dismiss cases, and (5) "[a]ll other relief as deemed necessary" [Doc. 8 p. 2]. The Court denied Plaintiff's motion without prejudice but noted, "Should Plaintiff desire to file a second Amended Complaint, she shall file a motion, in accordance with Local Rule 15. 1 on or before August 4, 2023 [Doc. 9 p. 2 (emphasis omitted)]. Plaintiff did not file a motion for leave to file a second Amended Complaint, nor did she file an amended pleading.

Pursuant to 28 U.S.C. § 1915, the Court will now proceed to screen the Amended Complaint. For the reasons set forth below, the Court **RECOMMENDS** that her claim against Defendant Charles Ray Faircloth proceed but that the District Judge dismiss all other claims and Defendants.

## I. RECOMMENDATION AFTER SCREENING OF COMPLAINT

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), the Court must dismiss an in forma pauperis action under 28 U.S.C. § 1915(e) if the Court determines that the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii). Courts also have a "continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them." *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co., Inc.*, (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1137 (6th Cir. 1991) (footnote omitted).

A. **Summary of Complaint**

Plaintiff's Amended Complaint largely mirrors her original Complaint [*See* Docs. 2 and 5]. She names the following as Defendants: (1) Oak Ridge Methodist Medical Center ("ORMMC"), (2) Beth Seaton, (3), Anna Chamble, (4) Charles Ray Faircloth ("Officer Faircloth"), (5) Chief of Police Robin Smith ("Chief Smith"), and (6) City of Oak Ridge [Doc. 5 p. 3]. In the caption of her Complaint, she also includes Dr. Nawras Baban, Dr. James Eppert, and Dr. Richard Bremer [*Id*. at 1]. Plaintiff alleges that she was admitted to ORMMC on January 11, 2020, and was discharged on January 13, 2020 [*Id*. at 5]. During her stay, she "was administered medication without a valid cause in high doses" [*Id*.]. On January 11, 2020, her heart stopped "[d]ue to the improper actions on the part of medical providers" [*Id*. at 6]. She was diagnosed with "[a]lcohol [w]ithdrawal without substantiation" [*Id*.].

Plaintiff alleges that she signed a release for Kathy Kroger ("Ms. Kroger") to receive her medical records, but Ms. Kroger would not let her see the medical records [*Id*.]. After Plaintiff requested her medical records from her stay in January 2020, she received them on July 14, 2020, and there were 74 pages of records [*Id*.]. She requested them again and received 70 pages [*Id*.]. On March 15, 2020, Plaintiff discovered "that the medical records received by [Ms.] Kroger contained 314 pages" [*Id*.]. Within these pages, Plaintiff alleges that there "is evidence of serious medical conditions regarding a potential stroke, a potential heart attack and a potential medical overdose" [*Id*.]. According to Plaintiff, "Defendants concealed that Plaintiff had potentially suffered a stroke, a heart attack and a medication overdose" and also "concealed proof of medical malpractice from Plaintiff" [*Id*.]. On March 1, 2022, ORMMC produced 64 pages of Plaintiff's medical records to Officer Faircloth "that were not responsive to the subpoena request submitted by [him]" [*Id*. at 7].

Based on the above, Plaintiff seeks (1) "a declaration that ORMMC violated Plaintiff's privacy as protected by HIPPA[,]" (2) "a declaration that Defendants concealed medical records and documentation from Plaintiff[,]" (3) "a declaration that Defendants committed medical malpractice[,]" (4) "a declaration that Plaintiff suffered physical, medical, and emotional damages as a result of Defendants' actions[,]" (5)"[t]hat Police Officer Charles Ray Faircloth be found guilty of civil rights violation[,]" (6) a finding "[t]hat Police Officer Charles Ray Faircloth collude[d] with ORMMC to keep truth from the [P]laintiff, a covered entity under HIPAA[,]" (7) "[t]he Oak Ridge Police Department be found guilty of instruct[ing] police officers to intentionally violate citizens' civil rights while making arrest[,]" and (8) "[t]he City of Oak Ridge be found guilty of knowing of these horrifying violations and instead of preventing civil rights violations, assisted them" [*Id*. at 7–8]. She seeks $5 million in compensatory and $10 million in punitive [*Id*. at 8].

B. **Screening of the Complaint**

It appears to the Court that Plaintiff alleges the following: (1) violation of HIPAA, (2) violation of 42 U.S.C. § 1983, and a (3) medical malpractice claim. The Court will address these separately.

1. **HIPAA**

Plaintiff alleges that Defendants violated HIPAA and specifically states that her claims "are predicated upon 42 U.S.C. § 1320d–6" [Doc. 5 p. 2].[1] The undersigned addressed Plaintiff's allegations under HIPAA in the previous Report and Recommendation, noting that there is no private right of action [*See* Doc. 4 pp. 4–5]. "HIPAA generally provides for confidentiality of

---

[1] It appears this claim is against ORMMC and individual Defendants Beth Seaton and Anna Chamble as they are records custodians [Doc. 5 p. 4].

medical records." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. §§ 1320d–1 to d-7)). Pursuant to § 1320d–6, it is an offense if a "person who knowingly and in violation of this part-- (1) uses or causes to be used a unique health identifier; (2) obtains individually identifiable health information relating to an individual; or (3) discloses individually identifiable health information to another person." 42 U.S.C. § 1320d-6.

"[P]rivate citizens have no standing to sue a covered entity for a violation of HIPAA." *Smith v. Louisville Metro Police Jail*, No. 3:21-CV-P533-CHB, 2022 WL 1306743, at *4 (W.D. Ky. May 2, 2022) (citing *Thomas v. Dep't of Health & Human Servs., Office for Civil Rights*, No. 17-6308, 2018 WL 5819471, at *2 (6th Cir. Aug. 24, 2018) ("HIPAA itself does not create a private right of action."); *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (per curiam) (holding that HIPAA cannot be enforced through either an implied private right of action or through § 1983)); *Outlaw v. RHA Health Servs., Inc.*, No. 5:23-CV-322-M, 2024 WL 504005, at *10 (E.D. N.C. Jan. 17, 2024) (noting that there is no private right of action under 42 U.S.C. § 1320(d)–6), *report and recommendation adopted by* No. 5:23-CV-00322-M-BM, 2024 WL 495945 (E.D. N.C. Feb. 8, 2024). "Rather, an individual's 'only redress for an alleged HIPPA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, which has the discretion to investigate the complaint and impose sanctions, both civil and criminal." *Brown v. Hill*, 174 F. Supp. 3d 66, 71 (D.D.C. 2016) (quoting *Johnson v. Kuehne & Nagel Inc.*, No. 11–cv–02317, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) (citation omitted)).

Given that Plaintiff does not have a private right of action arising from any alleged HIPAA violations, the Court recommends that this claim be dismissed for failure to state a claim upon which relief may be granted.

### 2. 42 U.S.C. § 1983

Plaintiff alleges that on March 1, 2022, Officer Faircloth, while acting under the color of state law, received her medical records from ORMMC that was not responsive to a valid subpoena [Doc. 5 pp. 1, 2–3, 8].[2] She also asserts that ORMMC colluded with Officer Faircloth [*Id*. at 8]. Under § 1983, a person may be liable for civil money damages for violating a person's constitutional rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983.

The Fourth Amendment protects from unreasonable searches and seizures. U.S. Const. amend. IV. Given that the Court must construe pro se complaints liberally, the Court recommends that this claim against Officer Faircloth proceed beyond the initial screening process. *Hoeltzel v. Pillsbury*, No. 2:19-CV-12328, 2021 WL 1214517, at *4 (E.D. Mich. Feb. 4, 2021) ("Sometimes the seizure of items not named in a warrant may violate the Fourth Amendment."), *report and recommendation adopted by* No. 19-12328, 2021 WL 1192977 (E.D. Mich. Mar. 30, 2021).[3]

Plaintiff includes ORMMC in these allegations. "[A] private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). In determining whether a private entity is so approximate to state actions, courts employ three tests:

---

[2] Plaintiff references Exhibit A, which she attached to her original Complaint [Doc. 2-1 p. 2]. The subpoena is titled, "Application for Judicial Subpoena" [*Id*.].

[3] The Court notes that Plaintiff's claim may be barred by the statute of limitations, which is one year for § 1983 actions in Tennessee. *Cooper v. Rhea Cnty., Tenn.*, 302 F.R.D. 195, 199 (E.D. Tenn. 2014). But the Court does not have sufficient information to recommend such a finding at this stage. *See Beaver St. Invs., LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 826 (6th Cir. 2023) ("A complete cause of action arises 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

"(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test." *Id*. Plaintiff's allegations appear to invoke the second test—the state compulsion test.[4] Under this test, the plaintiff must allege "that the state significantly encouraged or somehow coerced a private party to act, either overly or covertly, such that the choice to act was really that of the state." *Anderson v. Cnty. of Hamilton*, 780 F. Supp. 2d 635, 646 (S.D. Ohio 2011) (citation omitted).

Here, Plaintiff simply alleges that ORMMC produced records to him [Doc. 5 p. 7]. And that Officer Faircloth and ORMMC "colluded" together "to keep the truth from [her]" [*Id*. at 8]. Even construing the Amended Complaint liberally, the Court finds these allegations are insufficient to state a claim against ORMMC. *Anderson*, 780 F. Supp. 2d at 646 (granting a motion to dismiss the plaintiff's complaint despite him alleging that the state actors "coaxed, cajoled, or coerced" the individual defendant to make false statements); *see also Gold v. City of Sandusky*, No. 3:15 CV 2001, 2018 WL 1468992, at *8 (N.D. Ohio Mar. 26, 2018) (finding that "[r]esponding to the subpoena did not transform the medical provider [d]efendants into state actors").

Plaintiff also includes Chief Smith [Doc. 5 p. 4]. With respect to Chief Smith, Plaintiff has made no allegations against him. *Stojcevski v. Cnty. of Macomb*, 143 F. Supp. 3d 675, 685 (E.D. Mich. 2015) ("To establish personal liability under § 1983, the plaintiff must show that each defendant charged 'caused the deprivation of a federal right.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). And while Chief Smith may be a supervisor, this alone is not sufficient to

---

[4] The first test test—the public function test—means that "the private entity exercise[s] powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992). Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id*. Plaintiff does not include any allegations that support the public function or nexus test.

establish claim against him. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (explaining that in order to establish liability under § 1983 for supervisor liability, "the supervisor[] must have actively engaged in unconstitutional behavior" and that "liability must lie upon more than a mere right to control employees" (citation omitted)). The undersigned therefore recommends that the claims against Chief Smith be dismissed.

Finally, Plaintiff names the City of Oak Ridge [Doc. 5 p. 4]. Section 1983 does not permit a plaintiff to sue a municipality on the theory of respondeat superior. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978). "A local government entity violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Gregory*, 444 F.3d at 752 (citation omitted). Plaintiff alleges that violating civil rights "is a common routine and practice of the Oak Ridge Police Department" and that the "City of Oak Ridge is a municipality operating in Anderson County [that] collude[s] with the Oak Ridge Police Department to commit crimes and protect the guilty" [Doc. 5 p. 5]. She later requests that "City of Oak Ridge be found guilty of knowing of these horrifying violations and instead of preventing civil rights violations, assisted them" [*Id*. at 8]. Even reading these allegations liberally, the undersigned finds that they fall short of alleging a claim against the City of Oak Ridge. The Court therefore recommends that the City of Oak Ridge be dismissed.

### 3. Medical Malpractice

Lastly, Plaintiff alleges a medical malpractice claim. She states that "[d]ue to improper actions on the part of medical providers, Plaintiff's heart stopped on January 11, 20202 [*Id*. at 6]. "Defendants concealed that [she] had potentially suffered a stroke, a heart attack[,] and a medication overdose" [*Id*.]. In addition, she states that "Defendants concealed proof of medical malpractice from [her]" [*Id*.]. Although Plaintiff provides the licensing numbers for three doctors

8

Case 3:23-cv-00052-KAC-DCP   Document 10   Filed 02/29/24   Page 8 of 10   PageID #: 88

[*see id*. at 3], she does not allege which doctor treated her or which doctor committed the alleged malpractice. In any event, however, the Court recommends that this claim be dismissed because Plaintiff has not sufficiently pleaded jurisdiction over this claim. Notably, the undersigned made this same recommendation in the previous Report and Recommendation [*See* Doc. 4 p. 6]. Federal courts are courts of limited jurisdiction: federal question jurisdiction, *see* 28 U.S.C. § 1331, and diversity jurisdiction, *see* 28 U.S.C. § 1332. In order for the Court to exercise federal question jurisdiction, a plaintiff must "plead[] a colorable claim arising under the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006) (citation omitted). In order to properly allege diversity jurisdiction, the "matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1); *V & M Star, LP v. Centimark Corp.*, 596 F.3d 354, 355 (6th Cir. 2010) (explaining that § 1332(a) requires "complete diversity such that no plaintiff is a citizen of the same state as any defendant" (citation omitted)). And while the undersigned recommends that the § 1983 claim against Officer Faircloth proceed, the undersigned declines to recommend that the Court exercise supplemental jurisdiction over the medical malpractice claim as the § 1983 claim is not related to Plaintiff's medical malpractice claim. *See* 28 U.S.C. § 1367 ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

9

## II. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS**[5][6] that Plaintiff's 42 U.S.C. § 1983 claim proceed against Officer Faircloth beyond the initial screening phase but that all remaining claims and Defendants be dismissed.[7]

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[5] This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[6] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[7] Should the District Judge agree with this recommendation and allow this claim to proceed, this "does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude the defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12." *Bawcom v. Roades*, No. 3:22-CV-00923, 2023 WL 425376, at *4 (M.D. Tenn. Jan. 26, 2023).